IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER G.,[1] | : | Case No. 3:21-cv-00203 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[2]**

## I.    INTRODUCTION

Plaintiff protectively filed an application for Supplemental Security Income (SSI)

in October 2018. Plaintiff's claims were denied initially and upon reconsideration. After a

hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that

Plaintiff was not eligible for benefits because she was not under a "disability" as defined

in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

Statement of Errors (Doc. 6), the Commissioner's Memorandum in Opposition (Doc. 10),

Plaintiff's Reply (Doc. 11), and the administrative record (Doc. 5).

## II.     BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2015.[3] She

was twenty-nine years old on the SSI application date of October 10, 2018. Accordingly,

Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20

C.F.R. § 416.963(c). Plaintiff has a "high school education and above." *See* 20 C.F.R.

§ 416.964(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision

(Doc. 5, PageID 24-38), Plaintiff's Statement of Errors (Doc. 6), the Commissioner's

Memorandum in Opposition (Doc. 10), and Plaintiff's Reply (Doc. 11). Rather than

repeat these summaries, the Court will discuss the pertinent evidence in its analysis

below.

## III.    STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a

"disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S.

467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means

"the inability to do any substantial gainful activity by reason of any medically

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on October 10, 2018. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal

criteria—may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the

Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a

substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even

if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*,

896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.     THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to

Plaintiff's application for benefits. In doing so, the ALJ considered each of the five

sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920.

The ALJ made the following findings of fact:

> Step 1:     Plaintiff has not engaged in substantial gainful activity since October 10, 2018, the SSI application date.
>
> Step 2:     She has the severe impairments of Crohn's disease, a perirectal abscess, and arthritis.
>
> Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4:     Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b), subject to the following limitations: "(1) frequent crouching, kneeling, stooping, balancing, and climbing of

4

> ramps and stairs; (2) occasional crawling; (3) no climbing of ladders, ropes, and scaffolds; (4) no work around hazards such as unprotected heights or dangerous machinery; and (5) limited to performing jobs in which she would have access to restroom facilities at normal break times."
>
> She has no past relevant work.

Step 5:  Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 5, PageID 26-37.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 37-38.)

## V.  ANALYSIS

Plaintiff contends that the ALJ erred "in supposing that Plaintiff can schedule the diarrhea and vomiting occasioned by her Crohn's disease around an employer's break schedule," that the ALJ "failed to account for Plaintiff's Remicade infusions in his functional conclusions," and that "the ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified." (Doc. 6, PageID 534-37.) These contentions are not persuasive. For the reasons discussed below, the ALJ's conclusions are supported by substantial evidence.

The Social Security Administration uses a two-step process for evaluating an individual's symptoms. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017) (effective March 28, 2016). First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which

5

the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4.

The ALJ must examine "the entire case record, including the objective medical evidence;

the individual's relevant statements; statements and other information provided by

medical sources and others; and any other relevant evidence in the record." *Id.* at *4-5.

> In addition to all of the evidence, the ALJ should consider the following factors:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 416.929(c)(3). However, an ALJ does not necessarily

need to discuss every factor in every case—for example, if there is no evidence regarding

a factor, that factor will not be discussed because it is not relevant. SSR 16-3p at *8.

In this case, the ALJ followed the required steps. The ALJ first determined that

Plaintiff has medically determinable impairments (Crohn's disease, a perirectal abscess,

and arthritis) that could reasonably cause the type of symptomatology alleged. (Doc. 5,

PageID 26.) Next, the ALJ considered the evidence in the record and concluded that

Plaintiff's statements about the intensity, persistence, and limiting effects of these

6

symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 31.)

> Plaintiff challenges the ALJ's analysis at the second step, arguing:
>
> It is undisputed that Plaintiff has objectively substantiated that she suffers from the severe impairment of Crohn's disease. See (Tr. 26). It also appears undisputed that this impairment occasions symptoms including frequent bowel movements, abdominal pain, nausea, vomiting, and rectal abscesses. See (Tr. 30 & 32-34). In the course of denying her claim for benefits, the ALJ purports to accommodate and account for all of these symptoms, particularly Plaintiff's excessive often urgent bowel movements, by finding as follows: "Her testimony that she only has bowel movements up to six times per day is fully addressed by a normal break schedule with access to restroom facilities, as not all of her bowel movements could be expected to occur within an eight-hour workday." (Tr. 34); see also (Tr. 29).

(Doc. 6, PageID 535.) This argument fails because the ALJ adequately considered the objective medical and other evidence when evaluating the intensity and persistence of Plaintiff's symptoms, including Plaintiff's reported bowel movements, and substantial evidence supports his conclusion.

For example, the ALJ acknowledged Plaintiff's "longstanding history of gastrointestinal complaints." (Doc. 5, PageID 32.) He cited to many of Plaintiff's subjective complaints in the disability reports and at the hearing, which included severe diarrhea, severe nausea, vomiting, trouble eating, involuntary weight loss, trouble staying hydrated, dizziness, feelings of weakness, and a perirectal abscess with intermittent swelling. (*Id.* at PageID 30-32.) The ALJ also acknowledged that Plaintiff reported similar complaints to her medical providers on several occasions, but he indicated that the most serious complaints occurred prior to the SSI application date. (*Id.* at PageID 32-33.)

The ALJ also provided a detailed summary of Plaintiff's medical records and treatment history, for the time periods before and after the October 2018 application date. (Doc. 5, PageID 29-36.) For example, the ALJ acknowledged Plaintiff's longstanding diagnosis of Crohn's disease, which was confirmed through objective testing. (*Id.* at PageID 32.) The ALJ cited to records that documented Entyvio infusions starting in September 2016. (*Id.*; *see also* Doc. 5, PageID 357.) The ALJ acknowledged that although Plaintiff experienced some improvement with this treatment, she continued to experience loose stools occurring approximately six times per day in June 2017, and as many as eight to ten times per day in March 2018. (*Id.* at PageID 32.) The ALJ also cited to an August 2018 examination which showed draining of the perirectal abscess, which Plaintiff said recurred every two to three weeks since a 2016 incision and drainage procedure. (*Id.*)

The ALJ compared these findings to evidence dated after the October 2018 application date. (Doc. 5, PageID 33-34.) The ALJ discussed Plaintiff's December 2018 hospitalization, but he explained that subsequent records showed an overall improvement in Plaintiff's gastrointestinal symptoms. (*Id.*) The ALJ detailed several visits to Plaintiff's gastroenterologist and other providers, and he cited to many of Plaintiff's subjective complaints—as well as her denial of certain symptoms. (*Id.*) For example, in March 2019, Plaintiff reported having only two to three bowel movements per day, and she denied urgency, incontinence, or blood. (*Id.*, citing Doc. 5, PageID 387.) She also complained of abdominal cramping, but with no bloating or vomiting and stable nausea. (*Id.*) Although Plaintiff reported bleeding from her perirectal abscess in September 2019,

she again reported a baseline of two to three bowel movements per day with no blood,

urgency, or incontinence. (Doc. 5, PageID 34, citing Doc. 5, PageID 491.) Plaintiff

reported diarrhea between March 2020 and May 2020, but the frequency was not

reported. (Doc. 5, PageID 34, citing Doc. 5, PageID 517, 525.) The ALJ also pointed out

that in May 2020, "[Plaintiff] was doing so well on her Remicade that it was changed

from every six weeks to every eight weeks." (Doc. 5, PageID 34, citing Doc. 5, PageID

517.)

> The ALJ then summarized the post-application date records:

> Throughout the period under review, the claimant generally presented with a
> normal body weight that does not suggest an inability to absorb adequate
> nutrition (Exhibits 1F-15F). Despite her complaints, her various biologic
> medications have been reasonably effective in controlling her symptoms, and
> she only had one flare-up in December 2018 that required hospitalization
> (Exhibits 1F-15F). With only a few, rare exceptions, the claimant's records
> generally reflect no more than six bowel movements per day, which was
> sometimes as low as two per day, and she consistently denied any
> incontinence (Exhibits 1F-15F). Furthermore, the record indicates that her
> perirectal abscess was effectively treated with surgery (Exhibits 1F-15F).

(*Id.* at PageID 34.) The ALJ concluded that the balance of the evidence did not support

Plaintiff's allegations of symptom severity, specifically her allegations and testimony of

disabling bouts of diarrhea. (*Id.*) The ALJ accounted for the preponderance of the

evidence by limiting Plaintiff to the reduced range of light work set forth in the RFC.

(Doc. 5, PageID 29.) The ALJ specifically explained that the RFC limitation for a normal

break schedule with access to restroom facilities accounted for Plaintiff's testimony. (*Id.*)

He clarified that although Plaintiff testified to bowel movements up to six times per day,

"not all of her bowel movements could be expected to occur within an eight-hour

9

workday." (*Id.*) This conclusion is supported by Plaintiff's reports to her medical providers of bowel movement frequency since the application date, which are discussed above. The ALJ's conclusions are supported by substantial evidence.

Plaintiff contends that the ALJ "has mischaracterized or at least over generalized her sworn testimony and the broader record as it relates to the frequency of her bowel movements." (Doc. 6, PageID 536.) Plaintiff further asserts that the ALJ's "approach to Plaintiff's urgent bowel movements and vomiting is otherwise manifestly unreasonable" because Plaintiff "cannot schedule her urgent bowel movements and vomiting around her employer's break schedule. (*Id.*) Plaintiff's arguments are not well-taken.

First, the ALJ did not mischaracterize or over-generalize Plaintiff's testimony. Although Plaintiff testified that she had already had five bowel movements on the day of the August 2020 hearing, she acknowledged that the frequency had increased "only . . . really today." (Doc. 5, PageID 56-57.) Plaintiff stated that she usually had approximately four bowel movements on an "ordinary day." (*Id.* at PageID 57.) Plaintiff further testified that only some bowel movements were associated with urgency—and "[n]ot as much so as they used to be." (*Id.*) She also reported no recent accidents. (*Id.*) This testimony is generally consistent with her complaints to providers since the application date, as well as the ALJ's conclusion that "[w]ith only a few, rare exceptions, the claimant's records generally reflect no more than six bowel movements per day . . . ." (Doc. 5, PageID 34.)

Plaintiff specifically takes issue with the ALJ's statement that "[Plaintiff's] testimony that she only has bowel movements up to six times per day is fully addressed by a normal break schedule with access to restroom facilities . . . ." (Doc. 5, PageID 34;

Doc. 6, PageID 535.) Plaintiff also argues that the ALJ did not address Plaintiff's

testimony that she had already had five bowel movements prior to the hearing. (Doc. 6,

PageID 536, citing Doc. 5, PageID 56-57.)

      However, the ALJ accurately summarized Plaintiff's testimony in his summary of

Plaintiff's subjective complaints: "At the hearing, the claimant testified that her

gastrointestinal symptoms included frequent use of the restroom, including about four

bowel movements per day. She stated it is sometimes urgent, but she does not have

accidents." (Doc. 5, PageID 30.) Further, Plaintiff acknowledged that the increased

frequency that day was not normal and was caused by the stress of the hearing. (*Id.* at

PageID 56-57.) Although the ALJ did not specifically mention Plaintiff's testimony that

she already had five bowel movements prior to the hearing (*id.*), the ALJ accounted for

this testimony in his subsequent summary of the post-applicate date records: "***With only***

***a few, rare exceptions***, [Plaintiff's] records generally reflect no more than six bowel

movements per day. (*Id.* at PageID 34) (emphasis added.) As discussed above, this

summary is supported by substantial evidence, because the ALJ cited treatment notes

dated since the application date. And the ALJ's ultimate conclusion—that Plaintiff's

subjective complaints, including her testimony, are "not entirely consistent with the

medical evidence and other evidence in the record"—is also supported by substantial

evidence. Thus, regardless of whether the ALJ had a duty to specifically mention

Plaintiff's testimony about having five bowel movements prior to the hearing (which

constitutes one of the "rare exceptions" the ALJ referenced), the ALJ's failure to do so

constitutes harmless error. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir.

2012) ("We now make explicit what we have previously adopted by implication: harmless error analysis applies to credibility determinations in the social security disability context.")

Similar reasoning applies to Plaintiff's assertion that the ALJ mischaracterized the testimony when he stated that Plaintiff testified that she "only has bowel movements up to six times per day." (Doc. 5, PageID 34.) As discussed above, the ALJ accurately summarized Plaintiff's testimony earlier in the decision: "At the hearing, [Plaintiff] testified that her gastrointestinal symptoms included frequent use of the restroom, including about four bowel movements per day." (Doc. 5, PageID 30.) So it appears that, for the statement at issue, the ALJ intended to summarize Plaintiff's bowel movement frequency since the application date, instead of summarizing Plaintiff's testimony. Again, the ALJ's ultimate conclusion that Plaintiff's records "generally reflect no more than six bowel movements per day" is supported by substantial evidence. Accordingly, although this does appear to be a misstatement of Plaintiff's testimony, it is harmless error.

Plaintiff also contends that she experienced "urgent bowel movements and vomiting" which cannot be scheduled "around her employer's break schedule." (Doc. 6, PageID 537.) Yet the ALJ's RFC limitation for a normal break schedule with access to restroom facilities is not unreasonable and is supported by substantial evidence. In her summary of the medical evidence, Plaintiff cites to several records which she says document "ongoing struggles with frequent, often diarrheic bowel movements." (Doc. 6, PageID 532-33.) Plaintiff also states: "In addition to her diarrhea, other symptoms have also been documented throughout

12

the medical evidence such as nausea, vomiting, and/or abdominal pain." (Doc. 6, PageID 533.) However, most of these records are dated well before the October 2018 SSI application date, including some dated as early as December 2013. (*Compare* Doc. 6, PageID 523-33 *with* Doc. 5, PageID 262, 264, 266, 339, 342, 344, 350, 357, 415, 419, 422.)

As noted above, regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. See 20 C.F.R. § 416.335. Accordingly, the relevant time period in this case begins on the SSI application date of October 10, 2018. The records dated since the application date do not support Plaintiff's assertions. For example, although Plaintiff did indeed present to the emergency room with "nausea, vomiting, and [a] baseline level of non-bloody diarrhea," this visit occurred on December 5, 2018, less than two months after the SSI application date. (Doc, 5, PageID 427; Doc. 6, PageID 533.) Further, as explained in the ALJ decision, Plaintiff was hospitalized at that time for an acute Crohn's flare-up with, but her condition improved with treatment and intravenous fluids. (Doc. 5, PageID 33.) Plaintiff also cited to December 2018 gastroenterology and primary care visits, but these occurred just a few days after her hospitalization. (Doc. 5, PageID 411, 427, 479.) Despite her complaints at that time, Plaintiff told her gastroenterologist that she was overall feeling improved since her last Entyvio dose, which she received one week earlier. (*Id.* at PageID 427). She told her primary care provider that she was not experiencing any rectal bleeding or pain at that time. (*Id.* at PageID 480.)

As discussed above, the ALJ concluded that Plaintiff's condition generally improved after that time and with Remicade injections. (Doc. 5, PageID 33-34.) The ALJ supported this conclusion with citations to several records dated after the December 2018 hospitalization. (Doc. 5, PageID 33-34.) The ALJ's summary of Plaintiff's condition is supported by substantial evidence.

Additionally, as Defendant points out, the vocational expert (VE) testified that the jobs cited to by the ALJ at Step 5 would still be available even with an additional allowance for two additional, unscheduled, five-minute-long restroom breaks per day. (Doc. 5, PageID 69.) The ALJ did not find that further accommodations were necessary, and for the reasons discussed above, this conclusion is supported by substantial evidence. But even assuming that such additional breaks are warranted, the failure to include a limitation in the RFC would be harmless error. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (citations omitted); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) ("We are not required to remand where to do so would be an idle and useless formality.") (citations omitted).

As for Plaintiff's contention that "weight fluctuations were additionally noted during treatment," Plaintiff cites to a progress note dated in December 2017, almost ten months prior to the application date. (Doc. 5, PageID 262; Doc. 6, PageID 533.) More convincingly, the ALJ pointed out that during the relevant period at issue in this case, Plaintiff "generally presented with a normal body weight that does not suggest an inability to absorb adequate nutrition." (Doc. 5, PageID 34.) Indeed, Plaintiff weighed approximately 130 pounds around the application date, which equated with a normal

14

BMI of 24.62. (*Id.* at PageID 403.) She generally continued to gain weight after that time. (*See, for example*, *id.* at PageID 391, 393, 381, 493, 527.) The ALJ's conclusion regarding Plaintiff's weight is supported by substantial evidence.

Finally, Plaintiff contends that the ALJ erred by neglecting to account for Plaintiff's Remicade infusions in his functional analysis. (Doc. 6, PageID 537.) This argument is also unpersuasive. According to Plaintiff, the infusions occur "every six weeks and take about two-and-a-half hours to administer." (*Id.*, citing Doc. 5, PageID 60.) Yet as discussed above, the ALJ pointed to a May 2020 treatment note that indicated that Plaintiff was "doing so well on her Remicade that it was changed from every six weeks to every eight weeks." (Doc. 5, PageID 34, citing Doc. 5, PageID 517.) What is more, earlier records indicate that the frequency of Plaintiff's Remicade infusions decreased to every eight weeks as early as March 2019. (Doc. 5, PageID 381-82, 388, 492.) Regardless of whether Plaintiff received the infusions every six weeks or every eight weeks, the record does not support Plaintiff's contention that the infusions would "necessarily disrupt Plaintiff's adherence to a customary work schedule alongside the disruptions occasioned by her symptoms." (Doc. 6, PageID 537.) Plaintiff cites to a Sixth Circuit case in support of this supposition. (*Id.*, citing *Hurst v. Sec'y of Health & Hum. Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (citation omitted).) But the *Hurst* court concluded that the ALJ failed to consider the record as a whole; that court did not specifically address whether medical appointments or treatments that are similar to the duration and frequency of Plaintiff's infusions would "disrupt Plaintiff's adherence to a customary work schedule." *Hurst,* 753 F.2d at 519.

Instead, this Court finds persuasive Defendant's citation to *Swafford v. Comm'r of Soc. Sec.,* 2013 WL 1196590, at *1 (S.D. Ohio March 25, 2013) (Barrett, D.J.). The *Swafford* court recognized that the "ability to work on a regular and continuing basis would be effected [sic] by frequent absences due to medical appointments." *Id.* Yet the court concluded that "evidence of frequent medical appointments alone is not enough," and "there must be medical evidence such as a medical source opinion about the likelihood of absenteeism caused by the claimant's impairments and the need for treatment during working hours." *Id.* Here, Plaintiff did not offer an opinion regarding her residual functional capacity or the likelihood of absenteeism from any of her treating sources. Nor did she show that her appointments need to be scheduled during work hours.

Further, during the questioning of the VE at the hearing, the ALJ asked the about effects of "absenteeism at a rate of two times monthly." (Doc. 5, PageID 69.) Although the VE responded that such absenteeism would "rule out the ability to sustain full-time/entry-level/unskilled work" (*id.*), this hypothetical over-accommodates the time required for Plaintiff's Remicade infusions, regardless of whether they occurred once every six or eight weeks. Upon cross-examination, Plaintiff's attorney asked the VE only about additional breaks throughout the day and the need to elevate her legs. (*Id.* at PageID 70-71.) Plaintiff's attorney had the opportunity to ask the VE whether absenteeism consistent with the frequency and duration of Plaintiff's infusions would preclude full-time work or a "customary work schedule," but he did not. Accordingly, Plaintiff has not shown that her Remicade infusions necessarily conflict with a

16

"customary work schedule." The ALJ's RFC is supported by substantial evidence, and he did not err by failing to include additional limitations in the RFC.

## VI. CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports his conclusions. Specifically, the ALJ evaluated Plaintiff's symptom severity pursuant to the applicable regulations, including SSR 16-3p. The ALJ further provided reasonable explanations, supported by substantial evidence, for how he weighed the evidence. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT**:

  1. Plaintiff's Statement of Errors (Doc. 6) be OVERRULED;

  2. The Court AFFIRM the Commissioner's non-disability determination; and

  3. The case be terminated on the Court's docket.


               */s/ Caroline H. Gentry*
               Caroline H. Gentry
               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).